### PATRICK FAHEY v. HENRY MARSH.

*Estoppel by deed—Boundary.*

Where parties claiming under the same grantor recognize a boundary between them, and one of them afterwards conveys with reference to that boundary and without encroaching upon any rights existing in third parties, he and those who claim under him are bound by the description as against his grantee, and a change of the recognized boundary by a re-survey will not affect the grantee's rights.

Error to Kent. Submitted Jan. 15. Decided Jan. 21.

EJECTMENT. Defendant brings error.

*Miller & Voorheis* for plaintiff in error. A boundary long acquiesced in by the parties ought not to be disturbed, *Smith v. Hamilton*, 20 Mich., 433; *Joyce v. Williams*, 26 Mich., 332; *Stewart v. Carleton*, 31 Mich., 270; *Hayes v. Livingston*, 34 Mich., 391; *Rockwell v. Adams*, 6 Wend., 467; *McCormick v. Barnum*, 10 Wend., 105; *Van Deman v. Colberg*, 2 L. & Eq. Rep., 495; *Houston v. Matthews*, 1 Yerg., 116; *Nichol v. Lytle*, 4 Yerg., 456; *Yarborough v. Abernathy*, 1 Meigs, 413; *Gove v. White*, 20 Wis., 425; *Spiller v. Scribner*, 36 Vt., 245; *Halloran v. Whitcomb*, 43 Vt., 306; *Jackson v. Van Corlaer*, 11 Johns., 123; *Merriwether v. Larmon*, 3 Sneed, 447; *Taylor v. Zepp*, 14 Mo., 482; *Lindsay v. Springer*, 4 Har. [Del.], 547; *Gilchrist v. McGee*, 9 Yerg., 455; *Dibble v. Rogers*, 13 Wend., 536; *Kellogg v. Smith*, 7 Cush., 375; *Chew v. Morton*, 10 Watts, 321; *Whitehouse v. Bickford*, 29 N. H., 471; *Rangely v. Spring*, 28 Me., 127; *Missouri v. Iowa*, 7 How., 660; *Boyd v. Graves*, 4 Wheat., 513; *Bobo v. Richmond*, 25 Ohio, 115: 14 Amer. Law Reg., 642; *Kellum v. Smith*, 65 Penn. St., 86: 10 Amer. Law Reg., 533. Lines actually run take precedence of the calls in a deed, *Knowles v. Toothaker*, 58 Me., 172: 10 Amer. Law Reg., 601; *Craft v. Yeaney*, 66 Penn. St., 210: 10 Amer. Law Reg., 797.

*Andrew T. McReynolds* for defendant in error.

MARSTON, J. Marsh brought ejectment to recover a strip of land eighty-one and a half feet wide, and obtained a judgment therefor.

From the findings of the court it appears that Stewart and Ives were owners of a certain block of land; that by a written contract they sold two acres thereof to John Daily in 1857, and that Stewart, for the purpose of determining and locating the eastern boundary of such

two acres employed a surveyor named Yates, who made a survey and located the eastern boundary, and that Daily immediately went into possession of the land thus located and has continued to occupy and improve the same. Also that Daily and Stewart, being doubtful as to the correctness of such survey, employed one Coffinberry to resurvey the said two acres, which he did under the direction of Stewart, and he located the eastern boundary where Yates had located it. In 1859 Stewart sold to Daily one acre of land in said block immediately east of and adjoining his first purchase of two acres. Stewart and Daily again employed Coffinberry, who surveyed the same and located the east line of this acre, and Daily immediately built a fence thereon and has since occupied it; that this fence is still standing and has ever since been recognized by Stewart and Ives and those claiming the adjoining lands under them as the boundary.

The legal title to this block afterwards passed to Stewart, and he in December, 1864, conveyed to Daily, describing the lands by metes and bounds, two acres, which Daily accepted, supposing it to be a conveyance of the two acres which he was in possession of under the contract and Yates and Coffinberry's survey. As a fact, however, this deed described the land as commencing at the southwest corner of a certain government survey and following the government lines on the south and west, which were two rods south and two west of the south and west sides of the block.

In December, 1864, Stewart conveyed to Stephen O'Brien all of said block, except the two acres sold Daily, and March 25th, 1872, O'Brien conveyed to Daily, by metes and bounds, the one acre which the latter had contracted for with Stewart. In this deed the land was described as commencing at a certain point, being the southeast corner of lands theretofore deeded by Stewart to Daily, and this was accepted by Daily under the supposition that it properly described the one acre which had been

surveyed and taken possession of and fenced by him under his contract with Stewart.

February 24th, 1869, O'Brien conveyed to David J. Dean the entire of said block, except the three acres previously sold to Daily. At the time this conveyance was made, Dean knew where the eastern boundary of Daily's land was, as surveyed by Coffinberry, and as fenced and occupied by Daily.

Dean at once went into possession under his deed from O'Brien, furnished material and assisted in building a fence on the line as established by Coffinberry between Daily and himself.

June 21st, 1869, Dean conveyed to Patrick Fahey, the defendant in this case, plaintiff in error, one acre, describing it as commencing at the northeast corner of certain three acres *heretofore sold to John Daily and now occupied by him,* and the day before this conveyance was made Dean and Fahey went upon the premises and Dean then and there pointed out the east line fence of Daily's land as the west line of the acre to be sold defendant, and stated about how far defendant's east line would come. In April, 1870, defendant had his acre surveyed, assuming that Daily's east line fence was correct, and defendant then built his east line fence. Dean saw defendant build the fence, but made no objection.

December 14th, 1870, Dean conveyed to John Hefferman a certain tract, excepting four acres off the west end thereof, intending to convey the whole of block 36, excepting the westerly portion sold to Daily and Fahey. June 7th, 1871, Hefferman sold to the plaintiff Marsh, by a similar description. In May, 1876, plaintiff caused a survey to be made for the purpose of ascertaining the boundary line between himself and Fahey. In making this survey the surveyor first surveyed out Daily's three acres according to the description in his deeds, which, as already said, included two rods on the south and two on the west, not included in the block nor in the first survey, as made by Stewart and Daily, and in this way

moved westerly Daily's east and west line and consequently defendant's lines, which gave rise to this controversy. It seems clear from the finding of the court that in the written contract from Stewart to Daily of the two acres, and the survey thereof under their direction and possession taken thereunder, the clear intention was not to include the two rods on the south and west sides of the block, but that Daily should have two acres within the block, and all subsequent sales and surveys were made upon the correctness of the survey and possession taken by Daily under such survey. How the mistake came to be made in the deed to Daily, if it were such, or the land to be differently described, we need not inquire in this case. The court finds that Dean, before he sold to defendant, went with him upon the lands and pointed out to him Daily's eastern boundary fence as the true line, and agreed to sell defendant one acre next east thereof, and in the deed to defendant the land was described as commencing at a certain point in "the northeast corner of certain three acres of land heretofore sold to John Daily, and now occupied by him, running thence south along said John Daily's east line to the south line of said section No. twenty," etc.

Under such circumstances, whether the eastern boundary of Daily's land was correct or not, we are of opinion that as between Dean and Fahey it was accepted and agreed on as the western line of the acre to be sold, and which was sold and conveyed to the defendant. The land sold, and as described in the deed to defendant, was bounded on the west by the east line of Daily's three acres, "now occupied by him." So that whether the line of Daily's land, as then occupied by him, was too far east or not, so far as this defendant and Dean were concerned, and those claiming title to the remainder of the block through Dean, was a matter of no sort of consequence. Not only was this eastern line of Daily's land, as then established and occupied, pointed out and agreed upon by Dean and Fahey as the western boundary line

of the acre which the former was to convey to the latter, but it was so actually described in the deed. It requires no argument to show that a supposed mistake as to Daily's line, and a removal of the same farther west, afterwards made, could in no way injuriously affect defendant or change the location of the particular acre of land actually sold and conveyed to him. His particular piece of land was fixed and made certain by Daily's east line as it then stood, and a subsequent change thereof could not affect defendant.

The judgment must be reversed with costs, a judgment rendered in favor of the defendant, and the record remanded for farther proceedings under the statute.

The other Justices concurred.